# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LYNCHBURG STEEL, INC.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| v. | : | **NO. 09-4705** |
| **O'NEILL PROPERTIES GROUP, L.P.,** | : | |
| **Defendant.** | : | |

**DuBOIS, J.**                                                                    **December 1, 2010**

# M E M O R A N D U M

## I. INTRODUCTION

This case arises out of plaintiff Lynchburg Steel, Inc.'s ("Lynchburg") purchase of steel pursuant to a letter of intent in which defendant O'Neill Properties Group, L.P. ("OPG") formally authorized Lynchburg to initiate the placement of steel mill orders for the fabrication and erection of structural steel. Plaintiff alleges three causes of action against OPG: (1) breach of contract; (2) quantum meruit; and (3) violation of the Pennsylvania Contractor and Subcontractor Payment Act, 73 Pa. Cons. Stat. § 501 et seq. Presently before the Court is plaintiff's Motion for Partial Summary Judgment on All Elements of Count I Only, Save for the Quantum of Damages. For the reasons stated below, the motion is denied.

## II. BACKGROUND[1]

Lynchburg is a Virginia corporation engaged in the business of structural steel fabrication.

---

[1] The following facts are undisputed unless otherwise noted and are presented in the light most favorable to OPG.

(Pl.'s Mot. at 2; Def.'s Resp. at 4.)  In October 2007, OPG, a Pennsylvania property development limited partnership, engaged in discussions with Lynchburg about the construction of composite steel frame buildings for the Uptown Worthington Project ("the Project"), a large mixed-use development of retail, residential, and office space located in East Whiteland Township, Pennsylvania. (Id.; Def.'s Resp. at 6, Exs. A, E; Pl.'s Reply at 2.)

In a letter dated April 28, 2008, Bruce Auerbach, OPG's Vice President of Preconstruction, formally notified Lynchburg's Paul Hudnall of OPG's intent to enter into a contract with Lynchburg for Lynchburg's fabrication and erection of structural steel for the Project.  (Pl.'s Mot., Ex. 3.) Auerbach further notified Hudnall that "[a]lthough the letter is solely an expression of intent subject to the execution of a formal contract—by its issuance, [OPG] formally authorizes Lynchburg . . . to initiate the placement of steel mill order(s) totaling approx $870,000 in value, and shop engineering design valued at approx $70,000." (Id.) Lynchburg subsequently purchased steel for the Project and sent invoices totaling $940,742 to OPG in July, August, and November, 2008.  (Pl.'s Mot., Ex. 4.) OPG has not paid Lynchburg for the steel and Lynchburg has not delivered any steel to OPG. (Def.'s Resp. at 5, 11; Pl.'s Answers to Def.'s First Request for Admission ¶ 11, attached as Ex. D to Def.'s Resp.)

On June 16, 2008, Auerbach followed the letter of intent with a proposed Trade Construction Service Agreement ("Proposed Contract") between Malvern Hills and Lynchburg.  (Def.'s Resp., Ex. I.)  The Proposed Contract identifies Malvern Hills as the owner of the Project and identifies OPG's Bruce Auerbach as Malvern Hills' "authorized [r]epresentative." (Id. at C-1.)  According to OPG, Malvern Hills is a real estate partnership that owns the Project, and Malvern Hills is only one of the many partnerships for which OPG acts as an agent. (Def.'s Resp. at 6; Robinson Dep. at 11:7-

17.) OPG asserts that the Proposed Contract was not to be signed until Malvern Hills obtained financing for the Project, and that Malvern Hills has been unable to obtain financing to date. (Def.'s Resp. at 9-10; Auerbach Dep. at 95:2-17.)

Lynchburg filed this action against OPG on October 14, 2009 to recover $940,742, plus interest and costs. In the Complaint, Lynchburg alleges it is owed that sum as payment for steel it purchased pursuant to the April 28, 2008 letter of intent. (Compl. ¶¶ 11-12, 18, 20-21, 24.)

### III. LEGAL STANDARD

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). After examining the evidence of record, a court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

## IV. DISCUSSION

To prove a breach of contract under Pennsylvania law, a plaintiff must establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (citation omitted). Lynchburg seeks summary judgment only as to the liability elements of its breach of contract claim, arguing that the letter of intent is a contract authorizing it to purchase steel for the Project, and that OPG breached that contract by refusing to pay for the steel. OPG admittedly did not pay for the steel. The questions before the Court are whether the letter of intent constitutes a binding, enforceable contract and whether OPG's failure to pay Lynchburg constitutes a breach of that contract.

OPG raises two arguments in opposition to Lynchburg's motion: (1) Bruce Auerbach, OPG's Vice President of Preconstruction and the author of the letter of intent, did not have the authority to enter into contracts on behalf of OPG; and (2) irrespective of the entity contracting with Lynchburg, any agreement between the parties was contingent upon Malvern Hills (or OPG) obtaining financing for the Project. The Court addresses each of these arguments in turn.

### A. Whether Auerbach Had Authority to Enter into Contracts on Behalf of OPG is a Genuine Issue of Material Fact

The parties dispute whether Auerbach had either actual or apparent authority to enter into contracts on behalf of OPG. OPG contends that Auerbach did not, and that Lynchburg had actual knowledge that: (1) Malvern Hills, rather than OPG, was the owner of the Project, and (2) for purposes of the Project, Auerbach acted as a representative of Malvern Hills, not OPG. Lynchburg argues that Auerbach did have actual authority to enter into contracts on behalf of OPG, and that

even if he did not, he acted with apparent authority. For the reasons discussed below, the Court concludes that there is a genuine issue of material fact as to whether Auerbach had authority to enter, on behalf of OPG, into contracts in general or into the letter of intent at issue in this case.

### 1. Legal Standard

"It is well settled that an agent has the power to make contracts which will bind the principal if the agent has actual or apparent authority. Actual authority is the authority a principal expressly grants to an agent, while apparent authority exists where the principal, by words or conduct, leads people with whom the alleged agent deals to believe that the principal has granted the agent the authority he purports to exercise." Philadelphia v. One Reading Ctr. Assocs., 143 F. Supp. 2d 508, 517 (E.D. Pa. 2001) (citations and quotation marks omitted); see also Bolus v. United Penn Bank, 525 A.2d 1215, 1221 (Pa. Super. Ct. 1987) (describing apparent authority as "authority that the principal has by words or conduct held the alleged agent out as having") (citation omitted). "[A] third party can rely on the apparent authority of an agent when this is a reasonable interpretation of the manifestations of the principal." Bolus v. United Penn Bank, 525 A.2d 1215, 1222 (Pa. Super. Ct. 1987). But "a third party cannot rely on the apparent authority of an agent to bind a principal if he has knowledge of the limits of the agent's authority." Id. "Whether an agency relationship exists is a question of fact for the jury." Id. at 1221 (citing Levy v. First Pa. Bank N.A., 487 A.2d 857 (Pa. Super. Ct. 1985); Breslin v. Ridarelli, 454 A.2d 80 (Pa. Super. Ct. 1982)).

### 2. Analysis

The evidence regarding Auerbach's actual authority to enter into contracts on behalf of OPG presents a genuine issue of material fact sufficient to defeat a motion for summary judgment. OPG points to deposition testimony in which Jonathan Robinson, OPG's Chief Financial Officer at the

time Auerbach sent the letter of intent, states that Auerbach did not have authority to enter into contracts on OPG's behalf. (Robinson Dep. at 42:8-43:24.) Lynchburg, on the other hand, points to: (1) Auerbach's testimony that he had actual authority to enter into contracts of $5,000 or more so long as he obtained Robinson's approval, and (2) Robinson's testimony that when he saw the letter of intent, he did not raise any objection about Auerbach's authority to send the letter. (Auerbach Dep. at 23-8:18; Robinson Dep. at 44:6-11.)

A genuine issue of material fact also exists as to whether Auerbach acted with apparent authority to bind OPG. The letter of intent was drafted on OPG letterhead, identified Auerbach as OPG's Vice President of Preconstruction, and made no mention of Malvern Hills. (Pl.'s Mot., Ex. 3.) In addition, Robinson and other OPG employees were copied on the letter, and Robinson did not object, circumstantial evidence that he approved the letter. (Id.; Robinson Dep. at 44:6-11.) On the other hand, there is evidence that Lynchburg's reliance on Auerbach's apparent authority was unreasonable because it had actual knowledge both that Malvern Hills was the owner of the Project, and that for purposes of the Project, Auerbach acted not on behalf of OPG but on behalf of Malvern Hills. (Def.'s Resp., Ex. I at C-1; McConaghy Dep. at 24:12-25:13.)

### B. Whether the Letter of Intent is Binding and Whether the Parties Agreed to a Financing Contingency Provision Are Genuine Issues of Material Fact

OPG argues that the parties agreed Lynchburg would not be paid for the steel it purchased unless OPG obtained financing for the Project. OPG makes three legal arguments in support of this contention: (1) the letter of intent is not binding because it unambiguously refers to a forthcoming formal agreement; (2) in the alternative, the letter is ambiguous, so the court may consider parol evidence showing that before the letter of intent was issued, Auerbach informed Lynchburg's Paul

Hudnall that payment to Lynchburg was conditioned upon receipt of financing for the Project; and (3) even if the parties did not agree at the time the letter was issued that payment was contingent upon financing, the parties subsequently orally modified their agreement to include such a condition.

As explained further below, the Court concludes that the letter of intent is ambiguous and that the questions of whether the letter is a binding agreement and whether the parties intended that any agreement between them include a financing precondition provision are issues to be resolved by the trier of fact. Having concluded that the letter is ambiguous, the Court need not reach the issue of whether, if the letter indeed constitutes an enforceable agreement but does not contain a financing precondition provision, the letter subsequently was orally modified to include such a provision.

### 1. Legal Standard

Under Pennsylvania law, unambiguous contracts are interpreted by the court as a matter of law, whereas ambiguous writings are interpreted by the finder of fact. Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co., 588 Pa. 470, 481 (2006). "The court, as a matter of law, determines the existence of an ambiguity . . . ." Hutchison v. Sunbeam Coal Corp., 513 Pa. 192, 201 (1986). A contract is ambiguous if it is "reasonably susceptible of different constructions and capable of being understood in more than one sense." Trizechahn Gateway LLC v. Titus, 601 Pa. 637, 653 (2009) (citation omitted). "When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances." Ins. Adjustment Bureau, 588 Pa. at 481 (internal citations omitted). The trier of fact resolves conflicting parol evidence relevant to what the parties intended by the ambiguous provision.

Hutchison v. Sunbeam Coal Corp., 513 Pa. 192, 201 (1986).

### 2. Analysis

The third paragraph of OPG's letter of intent declares that the letter is "solely an expression of intent subject to the execution of a formal contract," but goes on to state that by its issuance, OPG "formally authorizes" Lynchburg to initiate the placement of steel mill orders. (Pl.'s Mot., Ex. 3.) Based on this language, it is unclear whether the parties intended the letter to be binding. The Court concludes that the letter of intent is ambiguous and that parol evidence is admissible to explain the ambiguity.

OPG points to parol evidence that it did not intend the letter of intent to be a binding contract and that the letter does not constitute a complete, enforceable agreement because the obtainment of financing for the Project was a condition precedent to payment. The evidence on this point is conflicting. Auerbach testified that he would not have signed the Proposed Contract unless financing had been obtained for the Project, and that before issuing the letter of intent to Lynchburg, he had engaged in discussions with Lynchburg's Paul Hudnall about financing as a precondition to payment. (Auerbach Dep. at 46:1-11, 95:2-7.) Thereafter, at the same deposition, Auerbach testified that he did not recall discussing with Lynchburg that payment for the steel was contingent upon financing, and that he did not "even remember having discussions with Paul Hudnall." (Id. at 113:12-15.) In light of this conflicting evidence, the questions of whether the letter of intent was binding and whether financing was a precondition to payment are properly left to the determination of the jury.

## V. CONCLUSION

For the reasons stated above, plaintiff's motion for partial summary judgment is denied. An appropriate order follows.